## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

William L. Platz, Jr.,

                    Plaintiff,       Case No. 24-cv-13041

v.                                Judith E. Levy
                                   United States District Judge

Dempsey, *et al.*,

                                  Mag. Judge Curtis Ivy, Jr.
                Defendants.

_____/

## OPINION AND ORDER
## PARTIALLY DISMISSING THE COMPLAINT [1]

This is a *pro se* prisoner civil rights case filed under 42 U.S.C.
§ 1983. Plaintiff William L. Platz, Jr. is a Michigan inmate who is
currently incarcerated at Parnall Correctional Facility in Jackson,
Michigan. He sues four individuals employed by the Michigan
Department of Corrections (MDOC): (1) Corrections Officer Dempsey,
(2) Corrections Officer Campbell, (3) Lieutenant Crites, and
(4) Sergeant Lambert. (ECF No. 1, PageID.1, 4.) The Court granted
Plaintiff permission to proceed *in forma pauperis* or without
prepayment of the filing fee for this action. (ECF No. 4.) *See* 28 U.S.C.

§ 1915(a)(1). For the reasons that follow, the complaint is dismissed in its entirety against Campbell, Crites, and Lambert due to Plaintiff's failure to state a claim against them. The case proceeds against Dempsey on Plaintiff's First Amendment retaliation claim. The remaining claims against Dempsey are dismissed for failure to state a claim.

## I.    Background

Plaintiff alleges in the complaint that around February 3, 2024, Dempsey informed him that he was assigned to work as a bathroom porter instead of as a wheelchair pusher. (ECF No. 1, PageID.7.) Plaintiff states that he "was never classified as a porter, only as a wheelchair attendant." (*Id.* at PageID.8.) Plaintiff complied with the assignment he received from Dempsey "even though [Plaintiff] knew [he] was never classified to do th[e porter] job" because Plaintiff "did not want a problem with this officer." (*Id.*)

Plaintiff states that "[a]t this time [he] began to keep a personal journal about officer Dempsey and his actions as something was not right about him. This was [for Plaintiff] to protect [him]self." (*Id.*) According to Plaintiff, he "wrote down every single day officer Dempsey

2

had his feet on the desk, kicked back like he was in a recliner, while on camera." (*Id.*) Plaintiff also "wrote down every time officer Dempsey was sleeping in the chair with his feet on the desk." (*Id.*) In addition, Plaintiff recorded in his journal the dates and times he observed Dempsey using a "State computer" "in the officers station" to order things online, watch movies, and visit "various unrelated work sites." (*Id.*) Plaintiff states that such a computer "is to only be used for work related issues, not personal use." (*Id.*)

Plaintiff indicates that he later discovered that Dempsey searched his living area and confiscated his journal. (*Id.* at PageID.8–10.) Plaintiff alleges that Dempsey started to retaliate against him "the next day after finding and taking [his] journal." (*Id.* at PageID.8.) Plaintiff went to the front desk, and Dempsey had his feet on the desk, above where the porters' supplies are kept, and "was relaxing or dozing." (*Id.*) Plaintiff said "excuse me" to Dempsey in an attempt to "get [his] porter supplies to do [his] job." (*Id.*) Dempsey did not move his feet. (*Id.*) Plaintiff then opened the desk's bottom drawer and "just knicked the bottom of [Dempsey's] shoe." (*Id.*) Plaintiff again said "excuse me" and opened the drawer. (*Id.*) Dempsey "kicked the draw[er] shut, just

missing [Plaintiff's] hand and said stand back." (*Id.*) Plaintiff's allegations are unclear, but it appears that Dempsey might have terminated Plaintiff from his job, after which Plaintiff walked out. (*Id.* at PageID.8–9; *see id.* at PageID.6 ("[A]fter officer Dempsey made me do the porter job for over two months, he then fired me and lied saying that I di[s]obeyed a direct order, when I did follow Officer Dempsey's direct order to leave the area.").) Plaintiff states that he returned "to [his] cube to enter this into [his] journal and it was gone, that[']s when [Plaintiff] knew officer Dempsey shook down [his] cube at some point pr[i]or to that." (*Id.* at PageID.9.)

Plaintiff indicates that "after all this happened that night," he "was called to the control center to be reviewed on a class II ticket by Lt. Crites." (*Id.*) According to a document attached to the complaint, the ticket apparently involves the following violation reported by Dempsey:

> At 10:17 hours [on 3/30/2024] [Plaintiff] tried to open a cabinet at the Officers Station in the 16 North lobby. [Plaintiff] did not have permission to do this. [Plaintiff] hit the cabinet in to [Dempsey's] foot while trying to open it. [Plaintiff] was given a direct order within three feet and with direct eye contact to "get back" and then to "leave the area." [Plaintiff] did not comply with this order immediately and had to be told several times. . . .

4

(*Id.* at PageID.28.)

Plaintiff states that Crites reviewed the ticket on March 30, 2024 even though the ticket reflects that it was reviewed by Lambert. (*Id.* at PageID.9; *see id.* at PageID.6.) Crites "was also the hearings officer" that heard Plaintiff's argument on the ticket. (*Id.* at PageID.9.) Plaintiff alleges that

> [o]n 03/30/24 at 18:11 hours . . . the only one I seen was Lt. Crites for ticket review period. On 04/08/24 I was called to the control center to be heard on the ticket by Lt. Crites, which is a violation of my Due process rights, and I was never seen by hearing investigator T. Ryder as requested, as it says in the ticket. [See Exhibits G, H.]

(*Id.*) Plaintiff "never seen [sic] or got to talk to a hearing investigator as requested on the ticket." (*Id.*)

Plaintiff alleges that "[w]hen [he] was asked if [he] had any witnesses, [he] said yes, Officer Campbell. Officer Campbell told [Plaintiff] himself that he told Lt. Crites that [Plaintiff] never stayed around when [he] was told to leave, that [Plaintiff] never hesitated but left the area immediately." (*Id.*) Plaintiff indicates that Campbell "wrote a statement saying that [Plaintiff] did comply with the direct [order] from Officer Dempsey." (*Id.* at PageID.6; *see id.* at PageID.7 ("[O]fficer

5

Campbell told the truth in his statement and told what really happened.").) Plaintiff alleges that Crites "conspired and lied saying that C/O Cambpell said that [Plaintiff] hesitated when [he] was given a direct order and that's a lie and counterdicts [sic] C/O Campbell's original statement." (*Id.* at PageID.6.)

On April 11, 2024, Dempsey told Plaintiff to "sign off [his] job and that [Plaintiff] didn't have a choice." (*Id.* at PageID.9.) Plaintiff told Dempsey that he "would sign off [his] job but that [he] would not sign off the bogus ticket [Dempsey] wrote on [him]." (*Id.*)

"[A]t 09:30 hours" on April 12, 2024, Dempsey "target[ed] [Plaintiff] and [his] area of control" by taking "numerous items" that belonged to Plaintiff and had his prisoner number on them. (*Id.*) Dempsey took Plaintiff's padlock for his locker and foot locker, "leaving all [his] property unsecure." (*Id.*) Plaintiff "received a contraband removal form," and Dempsey took twenty-four items that Plaintiff had had "for years" and were not subject to confiscation—even during prior "shakedowns," including "shakedowns" carried out by Dempsey. (*Id.* at PageID.10.) Plaintiff attached to the complaint a misconduct report authored by Dempsey dated April 12, 2024. (*See id.* at PageID.26.) The

report indicates that Plaintiff was issued a Class II and III misconduct for destruction or misuse of property and possession of contraband. (*Id.*) Also attached to the complaint is a contraband removal record that lists the confiscated items. (*Id.* at PageID.27.)

Plaintiff states that as of April 12, 2024 "the harrasment [sic] is still coming from officer Dempsey because [Plaintiff] fought his bogus ticket and [Dempsey] has threated [Plaintiff] with more tickets to come and to have prisoners come after [Plaintiff] if [Plaintiff] continue[s] to mess with him." (*Id.* at PageID.10.) Plaintiff also states that he "wrote the Classification Director about officer Dempsey's behavior and harassment and abuse and she responded 'You are on unemployable status[.]'" (*Id.*; *see id.* at PageID.32, 34.)

The complaint contains five causes of action: (1) Defendants conspired against Plaintiff "to remove him from [his] job as a wheelchair pusher" in retaliation for his "Liberty interest in keeping his mandated employment or face double O restrictions not working as a porter," denying Plaintiff due process under the Fourteenth Amendment and his rights under the First and Eighth Amendments; (2) Defendants deliberately and unnecessarily caused Plaintiff pain and suffering "as a

consequence of the[i]r[ ] actions," in violation of Plaintiff's Eighth and Fourteenth Amendment rights; (3) Defendants "knew or should have known that the circumstances such as were presented by the Plaintiff would occur, by the harassment and retaliation by them would require action to be taken to minimize the physical and/or emotional damage, pain and suffering" of Plaintiff or other similarly situated inmates, "but through there [sic] retaliation, conspiracy, intent and/or gross negligence, failed, but purposely refused to take such steps as were necessary to stop there [sic] behavior within thier [sic] custody and control, including the plaintiff's continued abuse as punishment"; (4) Defendants "intentionally inflicted physical pain and suffering upon the plaintiff through their acts and omissions"; and (5) Defendants "intentionally inflicted emotional distress upon the plaintiff." (*Id.* at PageID.10–11.) Plaintiff seeks monetary relief. (*Id.* at PageID.1, 12.)

## II.   Legal Standard

Under the Prison Litigation Reform Act of 1996 (PLRA), the Court is required to dismiss a case brought by a prisoner proceeding *in forma pauperis* if the Court determines that "the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

8

monetary relief from a defendant who is immune from such relief." 42
U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). The Court also must
dismiss, in part or in full, "a complaint in a civil action in which a
prisoner seeks redress from a governmental entity or officer or
employee of a governmental entity" if the complaint "(1) is frivolous,
malicious, or fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such
relief." 28 U.S.C. § 1915A(a)–(b). A complaint is frivolous if it lacks an
arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325
(1989).

Federal Rule of Civil Procedure 8(a) requires that a complaint
present "a short and plain statement of the claim showing that the
pleader is entitled to relief" as well as "a demand for the relief sought."
Fed. R. Civ. P. 8(a)(2)–(3). This rule is intended to give a defendant "fair
notice of what the . . . claim is and the grounds upon which it rests."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in
original) (internal citation omitted). Rule 8 "does not require 'detailed
factual allegations,' but it demands more than an unadorned, the-
defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and internal citations omitted). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To state a civil rights claim under § 1983, a plaintiff must allege that (1) they were deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–57 (1978); *see Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 468 (6th Cir. 2022). "Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings." *Boswell v. Mayer*, 169 F.3d

384, 387 (6th Cir. 1999); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that "the allegations of the pro se complaint" are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers").

## III. Analysis

### A. First and Third Causes of Action

In the first and third causes of action that appear in the complaint, Plaintiff alleges that Defendants retaliated and conspired against him. (ECF No. 1, PageID.10–11.) In the first cause of action, Plaintiff alleges that he was "den[ied] Due Process under the fourteenth Amendment." (*Id.*) Plaintiff's retaliation, conspiracy, and due process claims are addressed below.

To state a First Amendment retaliation claim, a plaintiff

must allege facts that support the following: (1) he "engaged in protected conduct," (2) "an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct," and (3) "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

*Heyward v. Cooper*, 88 F.4th 648, 657 (6th Cir. 2023) (alterations in original). "'Protected conduct' here would be anything protected by the First Amendment." *Id.*

In this case, it is unclear whether Plaintiff's allegations satisfy the first element of a retaliation claim: that he was engaged in conduct protected by the First Amendment. To the extent Plaintiff alleges that his desire to maintain his prison job was protected conduct, such an allegation fails to state a First Amendment retaliation claim. Plaintiff does not have a constitutional right to, or a protected interest in, prison employment.[1] *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) ("The Constitution does not create a property or liberty interest in prison employment." (collecting cases)); *Nettles v. Smoker*, No. 1:13cv1353, 2015 WL 1565429, at *4 (W.D. Mich. Apr. 8, 2015) ("It is well established that a prisoner has no constitutional right to prison

---

[1] Moreover, Dempsey changing Plaintiff from the wheelchair pusher job to the porter job would likely not satisfy the second element of a First Amendment retaliation claim, which requires an adverse action. *See Heyward v. Cooper*, 88 F.4th 648, 657 (6th Cir. 2023). "[T]he removal of a prisoner from his prison job has generally been held not to constitute 'adverse action' under the retaliation analysis." *Nettles v. Smoker*, No. 1:13cv1353, 2015 WL 1565429, at *5 (W.D. Mich. Apr. 8, 2015) (collecting cases); *see id.* at *4–5 ("conclud[ing that] regardless of whether plaintiff was suspended or terminated from the work detail, neither of these events were adverse actions sufficient to support a First Amendment retaliation claim," and the plaintiff's "retaliation claim fails for lack of an adverse action").

employment or to a particular prison job." (citing *Newsom*, 888 F.2d at 374; *Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011))); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) ("find[ing] that the district court properly dismissed as frivolous [under § 1915(e)(2)] Plaintiff's claim [in a § 1983 case] that he was fired from his prison job" (citing *Newsom*, 888 F.2d at 374)).

Although the issue of whether Plaintiff alleges that he engaged in protected conduct may be in some doubt, for purposes of PLRA screening, the Court assumes without deciding that Plaintiff sufficiently alleges facts showing that he was engaged in protected conduct by keeping the journal in which he recorded information about Dempsey's actions "to protect [him]self." (ECF No. 1, PageID.8.)

With respect to the second element of a retaliation claim, Plaintiff alleges at least one instance of a sufficiently adverse action: that Dempsey confiscated his property that had not previously been considered contraband. *See, e.g.*, *Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018) (citing cases finding that the confiscation of property was an adverse action for purposes of a First Amendment retaliation claim).

13

As for the third element, Plaintiff presents facts in the complaint that tend to show that the adverse action (the confiscation of property) was the result of Dempsey discovering Plaintiff's journal. Plaintiff alleges that Dempsey began to retaliate against him "the next day after finding and taking [his] journal." (ECF No. 1, PageID.8.) For purposes of PLRA screening, Plaintiff's First Amendment retaliation claim against Dempsey therefore proceeds.

The complaint contains no factual allegations regarding retaliatory conduct carried out by Campbell, Crites, or Lambert. Plaintiff states that when he was "heard" on the ticket by Crites, Plaintiff indicated that he wanted to call Campbell as a witness. (*Id.* at PageID.9.) According to Plaintiff, Campbell "told [Plaintiff] himself that he told Lt. Crites that [Plaintiff] never stayed around when [he] was told to leave, that [Plaintiff] never hesitated but left the area immediately." (*Id.*) Campbell "wrote a statement saying that [Plaintiff] did comply with the direct [order] from Officer Dempsey." (*Id.* at PageID.6; *see id.* at PageID.7.) Plaintiff's allegations regarding Crites involve Crites reviewing the ticket and conducting a hearing on it. (*See id.* at PageID.6, 9.) Plaintiff references Lambert in the complaint in

14

stating that the ticket reflects that it was reviewed by Lambert when it was actually reviewed by Crites on March 30, 2024. (*Id.* at PageID.9.) Thus, Plaintiff does not state a First Amendment retaliation claim against any of these three Defendants. *See Thompson v. Mich. Dep't of Corr.*, 25 F. App'x 357, 358–59 (6th Cir. 2002) (concluding that the district court "properly found that the claims set forth in the complaint would not entitle [the plaintiff, a Michigan state prisoner,] to relief" partly given that the plaintiff's "allegations of retaliation for exercising his First Amendment rights were insufficient to state a claim because he set forth no facts which would support his contention that the defendants were motivated by retaliation" (citing *Thaddeus-X*, 175 F.3d at 394)).

Turning to the conspiracy claim in Plaintiff's first and third causes of action, the Sixth Circuit has indicated that "[a] civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To state a conspiracy claim under § 1983, a plaintiff must allege facts that show that

"'(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff[ ] of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis*, 489 F.3d at 290). "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)).

*Id.* (second alteration in original); *see Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024) ("To get past the pleading stage on a conspiracy claim, a complaint must assert 'specific allegations' that plausibly suggest each of the[ ] elements." (quoting *Rudd v. City of Norton Shores*, 977 F.3d 503, 511–12, 517 (6th Cir. 2020); citing *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020))).

Here, Plaintiff alleges in a conclusory fashion that Defendants conspired against him. He provides no facts showing the existence of a single plan or shared objective. Because the complaint is devoid of factual allegations satisfying the elements of a conspiracy claim, the complaint fails to state such a claim against Defendants. *See id.*; *see*

*also Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("Th[e Sixth Circuit] has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002))).

As noted, Plaintiff alleges in the first cause of action that he was denied due process under the Fourteenth Amendment. (ECF No. 1, PageID.10.) But the complaint fails to state a due process claim under the Fourteenth Amendment against Defendants. Plaintiff does not specify how each Defendant denied him due process in relation to his employment. *See Lanman*, 529 F.3d at 684. Moreover, to the extent Plaintiff alleges that Crites violated his due process rights in reviewing his Class II ticket (*see* ECF No. 1, PageID.9), the allegation fails to state a claim. Plaintiff does not show that Crites' conduct "deprive[d] him of a protected liberty interest because the [conduct] neither extended the duration of his sentence nor imposed an atypical, significant deprivation." *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) ("In order to show the deprivation of a liberty interest protected by the

Fourteenth Amendment, a prisoner must show that the act extended the duration of his sentence, or that he suffered an atypical, significant deprivation." (citing *Sandin v. Conner*, 515 U.S. 472, 484, 486–87 (1995))).

In sum, Plaintiff's First Amendment retaliation claim in his first and third causes of action proceeds against Dempsey but not against the other Defendants. Plaintiff fails to state a conspiracy claim in his first and third causes of action against all Defendants. Plaintiff also fails to state a due process claim in his first cause of action against all Defendants.[2]

---

[2] To the extent Plaintiff alleges an Eighth Amendment violation in his first cause of action, that allegation does not state a claim that survives PLRA screening. Plaintiff does not articulate how each Defendant violated his rights under the Eighth Amendment. And as set forth below, "the loss of a prison job . . . does not violate the Eighth Amendment." *Sanford v. Armour*, No. 19-1270-JDT-CGC, 2020 WL 4369452, at *6 (W.D. Tenn. July 30, 2020) (internal citations omitted). Furthermore, to the extent Plaintiff asserts a state-law claim of gross negligence in his third cause of action, that claim "fails because 'Michigan's immunity statute does not . . . provide an independent cause of action for "gross negligence."'" *Peterson v. Polavarapu*, No. 22-1813, 2024 WL 5454755, at *2 (6th Cir. Oct. 9, 2024) (quoting *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 700 (6th Cir. 2018)) (finding that "the district court did not err in dismissing [the] state-law claims" asserted by the plaintiff, "a pro se Michigan prisoner," which included a gross-negligence claim); *Pearson v. Mich. Dep't of Corr.*, No. 2:19-cv-10771, No. 2:19-cv-10707, 2024 WL 2131718, at *7 (E.D. Mich. May 13, 2024) (concluding that the plaintiffs "improperly pleaded gross negligence as an independent claim").

## B. Second, Fourth, and Fifth Causes of Action

In the complaint's second cause of action, Plaintiff alleges that Defendants deliberately and unnecessarily caused him to experience "pain and suffering as a consequence of the[i]r[ ] actions" and thus violated his rights under the Eighth and Fourteenth Amendments. (ECF No. 1, PageID.11.) In the fourth cause of action, he alleges that Defendants "intentionally inflicted physical pain and suffering" on him "through their acts and omissions." (*Id.*) In the fifth cause of action, Plaintiff alleges that Defendants "intentionally inflicted emotional distress" on him. (*Id.*) Regardless of the legal basis for the second, fourth, and fifth causes of action, the complaint fails to state a claim against Defendants in these causes of action.

Plaintiff alleges in the second, fourth, and fifth causes of action that Defendants' conduct resulted in (1) pain and suffering, (2) physical pain and suffering, and (3) emotional distress. But the complaint contains no allegations regarding those types of injuries. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it

19

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). These three causes of action therefore fail to state a claim for relief on account of Defendants causing Plaintiff (1) pain and suffering, (2) physical pain and suffering, and (3) emotional distress.

Plaintiff's second and fifth causes of action fail for additional reasons. As for Plaintiff's second cause of action, that cause of action would not proceed even if the Court were to find that the basis of the cause of action is that Plaintiff was harmed by Dempsey assigning him to work as a bathroom porter instead of as a wheelchair pusher. Plaintiff "ha[s] no Fourteenth Amendment property or liberty interest in a prison job; and the loss of a prison job . . . does not violate the Eighth Amendment." *Sanford v. Armour*, No. 19-1270-JDT-CGC, 2020 WL 4369452, at *6 (W.D. Tenn. July 30, 2020) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003); *Newsom*, 888 F.2d at 374; *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *Illum'maati v. Bailey*, No. 3:20-cv-00546, 2021 WL 268718, at *3 (M.D. Tenn. Jan. 27, 2021) ("[P]risoners such as the plaintiff have no Fourteenth Amendment property or liberty

interest in a prison job, and the loss of a prison job . . . does not violate the Eighth Amendment."); *Dean v. Campbell*, No. 1:16-cv-700, 2016 WL 5349075, at *6 (W.D. Mich. Sept. 26, 2016) ("The loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment," and "[t]he Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment." (internal citations omitted)); *Bodman v. Aramark Corp.*, No. 14-14420, 2015 WL 3605069, at *5 (E.D. Mich. June 5, 2015) ("[T]he loss of a prison job can hardly constitute 'cruel and unusual punishment' in violation of the Eighth Amendment."); *Farmer v. Phillips*, No. 19-1211-JDT-cgc, 2020 WL 2945568, at *6 (W.D. Tenn. June 3, 2020) (concluding that the plaintiff "failed to state a claim for relief based on a loss of, or change in, his prison job" under the Eighth and Fourteenth Amendments), *aff'd*, No. 20-5730, 2021 WL 6210609 (6th Cir. Oct. 19, 2021); *Morgan v. Rewerts*, No. 24-1706, 2025 U.S. App. LEXIS 6904, at *3 (6th Cir. Mar. 24, 2025) (finding that the district court "correctly dismissed" the plaintiff's Eighth Amendment claim because "[t]he loss of a prison job does not rise to the level of an Eighth Amendment violation" and the plaintiff

"alleged no facts in the complaint suggesting that he suffered extreme psychological harm due to this loss").

With respect to Plaintiff's fifth cause of action, even if the Court construes the cause of action as asserting an intentional infliction of emotional distress claim arising under state law, the claim fails. "Under Michigan law, to state a claim for intentional infliction of emotional distress, [the plaintiff] must allege extreme or outrageous conduct which, intentionally or recklessly, causes extreme emotional distress." *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (quoting *Moore v. Johnson*, 826 F. Supp. 1106, 1108 (W.D. Mich. 1993)). The Sixth Circuit has stated that

> "[l]iability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills*, 212 Mich. App. 73, 536 N.W.2d 824, 833 (1995). Liability will not be found for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"; rather, the case must be one in which the facts would arouse the resentment of an average member of the community against the actor, leading him to exclaim, "Outrageous!" *Id.* (citing *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905, 908–09 (1985)).

*Id.* Here, Plaintiff fails to state a claim of intentional infliction of emotional distress because he "provides no factual allegation regarding [Defendants'] conduct that satisfies the pleading standards identified above." *Green v. Anderson*, No. 2:20-cv-45, 2020 WL 1933686, at *8 (W.D. Mich. Apr. 22, 2020); *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 183 (6th Cir. 2020) (determining that the plaintiff failed to state an intentional infliction of emotional distress claim because he "failed to allege factual allegations for all material elements"); *Thomas v. City of Detroit*, 299 F. App'x 473, 478 (6th Cir. 2008) (concluding that "[t]he district court properly dismissed" a claim of intentional infliction of emotional distress for failure to state a claim because the complaint "merely recites the claim's elements, without alleging any underlying *conduct* sufficient to satisfy them," which "is not enough" (emphasis in original)); *Arora v. Henry Ford Health Sys.*, No. 2:15-cv-13137, 2017 WL 4119946, at *5 (E.D. Mich. Sept. 18, 2017) (determining that the plaintiff's allegations that "'[d]efendants' conduct was extreme and outrageous' and the '[d]efendants' intentional and reckless conduct' caused injury to plaintiff" were insufficient to state a claim of intentional infliction of emotional distress), *aff'd*, No. 17-2252,

2018 WL 3760888 (6th Cir. July 9, 2018); *Abraham v. Borman's, Inc.*, No. 87 CIV. 4684, 1988 WL 168608, at *5 (E.D. Mich. Oct. 21, 1988) (finding that the plaintiff "failed to allege facts sufficient to support" an intentional infliction of emotional distress claim, given that "[t]here are no allegations which would tend to indicate that defendants knowingly or recklessly acted in an extreme and outrageous manner. Nor are there allegations of severe emotional distress.").

For the reasons set forth above, Plaintiff fails to state a claim against Defendants in his second, fourth, and fifth causes of action.

## IV.   Conclusion

Accordingly, under 42 U.S.C. § 1997e(c) and 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b), the complaint is DISMISSED in its entirety as to Campbell, Crites, and Lambert.

The case proceeds against Dempsey on Plaintiff's First Amendment retaliation claim. The complaint is DISMISSED with respect to the remaining claims asserted against Dempsey. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a)–(b).

IT IS SO ORDERED.

Dated: June 30, 2025                    s/Judith E. Levy
     Ann Arbor, Michigan              JUDITH E. LEVY

United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2025.

s/Kourtney Collins
KOURTNEY COLLINS
Case Manager